Case number 24268, Rivas v. Banks. One minute. Okay, Mr. Bellantoni. Whenever you're ready. Whenever you're ready. Good morning. May it please the court. My name is Rory Bellantoni and I'm here today on behalf of the plaintiff's appellants. The two issues that I'm here to discuss today are accessibility to this student's program and whether or not the IEP that was created for this student could actually be implemented in the school it was to be implemented in or whether it was factually incapable of being implemented. The student's IEP on page 28 sets out 35 special ed classes per week. One period, seven a day in a school without an extended school day that goes from 8 to 250. In addition to the regular special ed classes, there are related services five times per week for three of them and three times per week for another. The student's IEP as created has him in nine classes three days a week, eight classes two days a week. The related services are 60 minute services. The regular classes are 45 minutes. Okay. Let me ask you two questions. First, with respect to accessibility, which would be a serious issue, but wasn't that forfeited in exactly the way that forfeiture is catastrophic because it didn't give them a chance to answer. We don't really know whether it was accessible or whether they could make it accessible. That's my first question. As to the other, isn't that typically something that is in the discretion that we have to defer to their judgment as to whether it can be done? I don't think mere accessibility is something the court would need to or have to defer to the SRO. Accessibility, I think that is not something we would defer if it were in the record, but you didn't raise it at the time during the time that they could have dealt with it and we don't really know. If we had, if you had raised it and they said we can't do it and so on, that would be a big issue, but I don't see how it's before us. In fact, we have another case in Polanco where we decided the same thing and you or somebody saw it served and the Supreme Court turned it down. There are two arguments, Your Honor. One is whether or not there would be a waiver. In other words, the plaintiff, the pleading requirement would be waived because this issue goes to the heart of this case, but I'd ask the court to look at this in another way. In New York, the DOE has the burden of proof on prong one. We know what the burden of proof is with respect to the educational program, tailored to the student's disability, meaningful progress from year to year, but there has to be some bare minimum things that the DOE needs to prove. One would be that there's actually a place where this IEP could be implemented and that it's accessible. Their own IEP requires accessibility. The IEP's... Do we assume accessibility unless you show it on the record that it isn't? I think that's the problem and perhaps why the parent didn't raise this in the due process complaint. The IEP says that the student needs an accessible school. You would expect the DOE to recommend a school that's accessible. When we file a due process complaint, it's usually over a dispute. Parent wants a 6 to 1 to 1 program. They recommend a 12 to 1 to 4. But this program... Now, problematic in this case is the question was asked. My understanding is there was some answer given, but attorney from our firm withdrew the question. You say the question was asked. The question was not asked, is this school accessible? The question was asked, would you place the student in a school that's not accessible? Some version of that, right? There's nothing in the record to establish that the school's not accessible. Correct. I think the question was asked, but then withdrawn. On appeal, we tried to show in the brief there was a link to this school that said it was not accessible. That doesn't exist. The link doesn't exist. It's not a permalink. It says 404 error. Understood. It's some evidence. Rules of evidence don't apply in the proceedings. Some evidence of what? Well, if the website says the school is not handicapped accessible, it's some evidence that it's not. And here it says it's admissible in these proceedings below. The DOE, by the way, when this came up, didn't say the school's accessible so let's move on. It was an objection, not a due process complaint. They say now it's accessible. I don't believe it did, that it was accessible. The DOE put in their brief is a link now to the school that says today it's partially accessible, but it never came out that the school was accessible then. And if this is not an issue where the court is willing to say this goes to the heart of the dispute and the requirement that this being a due process complaint be waived, again, I'd ask the court to consider when the legislature, New York State legislature, put the burden on the DOE to come into these proceedings and prove that it is providing a fake. I understand they can't be omniscient and think of every single issue that might or might not make the program appropriate. But accessibility certainly is one. If it's in the complaint, the student's in a wheelchair, they didn't bring a witness in to testify. A majority of the hearings they do bring in witnesses to testify about the school and the location. There was no witness here. I think you had started by trying to argue, raise your third argument about the impossibility of providing all the services that the IEP required. Why isn't it a question for the IHO and SRO to which we would defer how to schedule pull out or push in services, how to use the time during the day, lunch, recess, things like that? Your Honor, I would say if there was testimony about how the DOE intended to implement this student's program and the IHO or SRO used their special expertise in education law to say that's feasible, that can be done, yes, I'd have a hard time saying you don't have to defer, but that did not happen here. We're told broadly that, well, we could push some services into this student's classroom, but the occupational therapy, physical therapy services have to be done in a separate room that requires separate equipment. Why is this something that we or a court have any more knowledge rather than the IHO and SRO, the people who are directly involved? I mean, you know, I worry about deferring, but this is something I don't know how the school can do it, and they are the ones who should be able to do it, and that's true, and yet they did not, the DOE, their witness, there was no witness that specified how that would be done for this student. Do you agree that the services are not mutually exclusive? The 35-hour class and the special services, like occupational therapy, there could be overlap in a variety of instances, couldn't there be? There could be. The question is, would it be appropriate where the IEP calls for 35 hours of special education in the special ed classroom, not 35 periods throughout the school? So if there's one class, and it's more than one, I wouldn't be a peer, which is one, if there's one class where that student is pulled out of the special ed classroom to receive a service somewhere else, physical therapy, then you're down to 34 sessions per week the student is getting in the classroom, and this can be solved with an extended school day. We're not talking about a huge lift here, an extra two hours in the day would accommodate this student's IEP, or create an IEP with 28 classes, and then come in and send 28 classes per week instead of 35 is appropriate for this student, assuming that can be done, given state regulations that might require how many hours of education must be given in addition to the related services. And the reality here is if this student is in this program, the student is not going to get these services. Your Honor, the periods are 45 minutes. The related services are 60 minutes. How do you push 60 minutes into 45? Okay, the argument can be made, you can carry that over 15 minutes into the next classroom, but now you're pushing 15 minutes of the last therapy session into a 45 minute session, and then only 30 minutes of the next therapy that the student is getting, so then you have to push 30 minutes into the next session. But that's not a logical impossibility. You would have to do those things, but I think at that point we're no longer in the question of logical, mathematical impossibility. We're just, is that feasible, is that a good way to provide these services and the like, and it's on that that we defer. And nobody came in and said that. They didn't bring a witness in at this hearing and went through what I just said and said, yes, we move mats into the classroom. The classroom is as big as a courtroom. Maybe it's not. We didn't hear from a witness on the burden of proof, the burden of proof and the burden of production. We didn't hear from any witness that would tell us, and you by extension, how the related services, 19 hours of related services can fit into a week with 35 periods of special education. We're talking almost 55 hours or periods in a week that has six a day with an hour for lunch and a break. You've reserved a couple of minutes for Rupa. I'm sorry. One, just quickly, it's not addressed in the briefs. The district court remanded on the nursing services under the pendency order, right? Does that impact our jurisdiction? Not in this case. The IHO found there was no prior, no administrative order from a prior year, no agreement, no unappealed order that would form the basis of pendency. So that separate matter that would not affect the final FOFD and the SRO decision here, two separate years. As your Honor is aware, the pendency would be based on a decision in an IHO case number from a year before. And therefore, that remand wouldn't divest this court of jurisdiction because pendency and placement are evaluated completely differently, as you know. You're not asking us to review what I understand, I think, from DOE that was the conclusion of the agency on remand, correct? We'd love to judge, but no. We didn't appeal that to the SRO and we didn't appeal that here. No, we're not. Thank you, counsel. You've reserved a couple minutes for rebuttal. Thank you. May it please the court, Jeff Kerfman on behalf of the DOE, I'm grateful to those. Polanco recently resolved in DOE's favor. Revis waived her claim that the assigned school is inaccessible and identifies no applicable exception to the waiver rule. She concededly did not raise this claim in her due process complaint. She does not claim it was encompassed within another claim. And she does not dispute that neither the IHO nor the SRO reached this issue. And her position that this court should recognize a standalone exception for issues that go to the heart of the dispute does not comport with this court's precedence. In CF, this court overlooked the waiver rule where both the IHO and the SRO reached the issue and there was a record for this court's review. That is not the case here, and this case illustrates precisely why that record is critical. Revis now asks this court to engage in a notice inquiry when there has been no factual or administrative development. And she could have prevented the need for that type of inquiry by amending her due process complaint as the statute plainly permits. We have moreover, Your Honors, cited publicly available information showing that this school is accessible in the sense that it has accessible entrances and exits, it has some accessible classrooms, it has some accessible restrooms, and it has- We just don't know enough to know anything about that issue. Your Honor, I point that out solely to make the point that to the extent the court is inclined to draw out a broad capacious exception to the waiver rule on the grounds the plaintiff suggests, this is not the case to create that exception. There's no indication of the type of notice that the plaintiff presents. Moving next, Your Honors, to the issue of the extended school day. The district court properly rejected Revis' challenge on this basis. The IEP explains that most related services would occur on a school day. The IEP does not say anywhere that related services cannot take place during special education periods, between those periods, or extending across those periods. Judge Nathan, as you mentioned, there is no mutual exclusivity here reflected in the IEP. And I would emphasize- Right, that those should be done, I guess, push out. That's correct, Judge Nathan, and I think that highlights the limited circumstances in which pullout services are envisioned in the IEP. And DOE's witness, I think, confirmed as much that there would be room within the 35 periods, and again, spanning across those periods, for related services to be provided on a pullout basis. And I'd add that Revis' argument that DOE is attempting to materially alter the IEP on these grounds rests on her unproven assumption that the IEP does not permit related services to occur on a pullout basis during these 35 periods and between them. The witness' testimony fairly explained that issue. And I'd just end by, Judge Calabresi, as you noted, this is an issue of education policy. This Court has been clear that some deference is owed to administrative experts in these issues. There are consistent decisions from both the IHO and the SRO finding that it was possible to implement this IEP, and therefore, Revis has not met her burden in this posture of showing that the SRO erred on this issue. If the Court has no further questions, we would ask that you affirm. I take it you agree the remand doesn't impact our jurisdiction on the pendency order? Your Honor, I understand the point. My understanding in this posture is that there was a remand, there was a decision from the IHO in DOE's favor, and that there hasn't been an appeal from the IHO decision on that issue, and therefore, there's nothing left to resolve in this case other than the issues presented in this appeal on which the District Court granted DOE's summary judgment. Thank you, Counsel. Thank you. If I may, just briefly with respect to CF, there's nothing in CF or the cases that followed that stands for the proposition this Court couldn't recognize additional exceptions to the waiver rule. CF, the Court was mostly concerned with fundamental fairness to the DOE, and we don't want to sandbag the DOE. I don't see how asking their witness, who's supposed to know if the school is accessible, they create the IEP, they recognize the student needs a wheelchair accessible school, and then you ask the witness, oh, by the way, is that school wheelchair accessible, and you get sustained, don't even ask the question. Not even ask it and we'll deal with it later, but that's not in your DPC, you can't even ask that. What if it were vision services they were talking about, and the question was, by the way, do you even have a teacher that can deliver those services? The answer is no. And the IHO says, wait a minute, you didn't object to vision services in your DPC, you only objected to the size of the class. Yes, but their witness came here on cross-examination, admitted that the service doesn't even exist, but the parent would be precluded from arguing there was a denial of fate because that wasn't in a DPC, and there was no way that the parent could know that if the IEP called for vision services, there wasn't actually a provider at the school. So here, yes, Judge. So here, I understand CF, and I understand the holding in CF, but nothing in that case stands for the proposition that in a case like this, a waiver wouldn't also be appropriate since there is no unfairness to the DOE. Not only should they know, not only do they know, they're supposed to pick a school, find a school that is handicapped accessible. Not randomly assign a school and not know. If a student shows up on day one and cannot get in the building... You've said this now quite a few times. Yes, Judge. Thank you, I have nothing further. Thank you, counsel. Thank you both. We'll take the case under advisement.